# ILLINOIS OFFICIAL REPORTS

---

### *People v. Hamilton*, 2011 IL App (2d) 100739

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HEZEKIAH HAMILTON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0739 |
| Filed | December 14, 2011 |
| Rehearing denied | January 13, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's sentence to 55 years' imprisonment for first-degree murder was upheld over his claim that he was a deportable alien and such a sentence could not be justified, since defendant's status as a deportable alien was not a factor to be considered in connection with the length of a sentence for first-degree murder. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 07-CF-3445; the Hon. Timothy Q. Sheldon, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Thomas A. Lilien and Jaime L. Montgomery, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Kristin M. Schwind, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Bowman and Zenoff concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant, Hezekiah Hamilton, appeals from his 55-year term of imprisonment for first-degree murder (720 ILCS 5/9-1(a)(2) (West 2006)). He argues only that, "because [he] is facing deportation to Jamaica, imprisoning him for 55 years cannot be justified by any rational criteria." We do not agree that a status as a deportable alien should be a factor in the length of a sentence for first-degree murder. We therefore affirm defendant's sentence.

¶ 2                              I. BACKGROUND

¶ 3    A grand jury indicted defendant on one count of first-degree murder (knowing performance of acts creating a strong probability of death). The charge stemmed from the October 30, 2007, stabbing death of Brenetta Beck. Defendant had a bench trial, and, on March 11, 2010, the court found him guilty.

¶ 4    At sentencing, the State requested that the court impose a 60-year term of imprisonment, the standard-term maximum. The court noted that defendant was subject to discretionary extended-term sentencing because he was serving the mandatory-supervised-release portion of a sentence for a Class X felony when he committed the murder. It discussed all of defendant's mitigation evidence and stated that it had considered all statutory factors in mitigation. It further explicitly stated that it had taken into account the cost of defendant's incarceration. The mitigating evidence was its basis for imposing a sentence of 55 years' imprisonment rather than 60.

¶ 5    Defendant timely moved for reduction of his sentence, the court denied the motion, and he timely appealed.

¶ 6    Defendant is a Jamaican citizen. He was born on June 16, 1983. His projected parole date is October 18, 2062.

¶ 7                                    II. ANALYSIS

¶ 8        On appeal, defendant has expressly disavowed any argument that the court failed to consider statutory factors in mitigation. He rests his claim that his sentence is too long entirely on the argument that the inevitability of his deportation makes imprisoning him for 55 years unreasonable and a waste of money. He points out that he will be 79 years old when he is released from prison. The State responds that a status as a deportable alien cannot be what amounts to a factor in mitigation in a murder case.

¶ 9        We agree with the State. When a first-degree murder sentence is otherwise appropriate and commensurate with the seriousness of the offense, it would be inconsistent with the ends of justice for a status as a deportable alien to be cause to reduce the sentence.

¶ 10       The inescapable implication of defendant's argument is that noncitizens typically should get shorter sentences for deportable crimes because they will be removed from the United States upon their release. That argument has at least three unacceptable implications. One, the rule would be unfair to citizens because it would frequently result in their receiving more severe sentences than noncitizens. Two, the rule would reduce the entire role of *punishment* to *protection* of the United States' public from convicted defendants without giving any weight to the need to deter or the need to avoid deprecating the seriousness of a defendant's conduct. Three, the rule would give no weight at all to the need to protect the residents of an offender's nation of citizenship. It would institutionalize a policy of simply exporting convicted offenders where possible.

¶ 11       We find no definitive expression of our legislature's position on the interaction between deportation and the severity of sentences. However, section 5-5-3(*l*) of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3(*l*) (West 2006)) and its legislative history speak to a closely related point.

¶ 12       Section 5-5-3(*l*) as a whole provides that, as an alternative to the carrying out of a sentence, an alien in State custody may be released to the custody of the United States for deportation when "(1) a final order of deportation has been issued against the defendant pursuant to proceedings under the Immigration and Nationality Act," and "(2) the deportation of the defendant would not deprecate the seriousness of the defendant's conduct and would not be inconsistent with the ends of justice." 730 ILCS 5/5-5-3(*l*)(A), (*l*)(B) (West 2006). However, under section 5-5-3(*l*)(C) (730 ILCS 5/5-5-3(*l*)(C) (West 2006)), a court *may not* suspend the sentence of and release for deportation a defendant subject to the truth-in-sentencing provisions of section 3-6-3(a)(2) of the Code (730 ILCS 5/3-6-3(a)(2) (West 2006)). First-degree murder is one of the offenses subject to the truth-in-sentencing provisions. 730 ILCS 5/3-6-3(a)(2)(i) (West 2006).

¶ 13       Section 5-5-3(*l*) was added to the Code by Public Act 89-627, § 5 (eff. Jan. 1, 1997). The proposed provision drew heated criticism, particularly in the House of Representatives. The most strongly voiced concern was that the provision would result in injustice because many serious offenses are not subject to the truth-in-sentencing provisions; thus, aliens convicted of those serious offenses might be deported without serving appropriate sentences. *E.g.*, 89th Ill. Gen. Assem., House Proceedings, Mar. 28, 1996, at 68-69 (statements of Representative Dart). The sponsor responded that a convicted person could not be deported under the

provision unless the local State's Attorney requested it and the court agreed. This, he argued, was adequate protection against release without due punishment for those convicted of serious offenses not subject to truth in sentencing. 89th Ill. Gen. Assem., House Proceedings, Mar. 28, 1996, at 69, 71 (statements of Representative O'Connor). He agreed that a law that allowed those convicted of serious offenses to escape imprisonment would be unsatisfactory: "Based on the seriousness [of offenses such as burglary], we want those type of individuals to get justice from our Department of Corrections, here in the State of Illinois, which will be much more, much more severe than they would receive anywhere else." 89th Ill. Gen. Assem., House Proceedings, Mar. 28, 1996, at 72 (statements of Representative O'Connor).

¶ 14       Section 5-5-3(*l*) and the debate on its inclusion in the Code show that, although the legislature was persuaded that it can be both economically efficient and just to allow deportation to serve as a substitute sentence for minor offenses, no such substitution should be considered for serious offenses. Clearly, the members of the legislature did not want a deportable alien defendant to receive less than a just sentence as a result of his or her citizenship status. The same policy must apply to a reduction of a sentence because of a status as a deportable alien.

¶ 15       Here, defendant does not claim that his sentence was out of proportion with the seriousness of his offense or was otherwise unjust. Moreover, he has not tried to show that a significantly lower sentence could, despite the propriety of the current sentence, nevertheless be a just alternative. A reduction such as defendant requests would be inconsistent with the ends of justice.

¶ 16                                 III. CONCLUSION

¶ 17       For the reasons stated, we affirm defendant's sentence.

¶ 18       Affirmed.